UNITED STATES *v.* SOWLES.

*District Court, D. Vermont.* May 28, 1883.)

CONTEMPT—REFUSAL OF BANKRUPT TO OBEY ORDER OF COURT—COMMITMENT TILL FURTHER ORDER.

A bankrupt, for non-compliance with an order of the court directing him to pay over to the assignee certain funds fraudulently retained by him, was committed to jail for contempt until he complied with such order. He never did comply with the order, but was admitted to bail for his remaining within the district subject to the order of the court and recommitment. For his continuing contempt in not complying with the order he was recommitted, and again released on his own recognizance not to depart out of the district, and to submit himself to all orders in the premises. He left the district to reside, and a warrant was issued for his arrest and commitment until compliance or further order, on which he was a third time arrested, and released on bail until hearing could be had. *Held*, that as the court had power to commit until further order, the arrest was legal and the bail valid. .

At Law.

*Kittredge Haskins,* U. S. Atty., and *William D. Wilson,* for plaintiff.

*Heman S. Royce,* for defendant.

WHEELER, J. This is an action of debt upon a recognizance for the appearance of William Doran. The only questions made are as to the validity of the recognizance when entered into. The bankrupt law provided that the bankrupt should at all times, until his discharge, be subject to the order of the court, and that for neglect or refusal to obey any order of this court he might be committed and punished as for a contempt of the court. Rev. St. § 5104.

Doran was by this court adjudged a bankrupt. The assignee alleged that the bankrupt had not delivered up all the property which

passed by the assignment, and on proceedings to compel delivery it was found that he had detained from the assignee the sum of $2,529.50, which he was ordered to deliver by a time named. The events of the proceedings have much more than justified this finding. He did not deliver or pay that sum, and, on full hearing, was adjudged guilty of contempt for that cause, and committed to jail until compliance.

The order has never been complied with in any part. After confinement for several months, he was, on his application, and showing that his health was impaired, admitted to bail for his remaining within the district, subject to the order of court and to recommitment. A few months after that, on petition of the assignee, he was cited to appear and show cause why he should not be recommitted for his continued non-compliance, and, on appearance and hearing, was recommitted. Again, on his petition and showing as to his health, he was admitted to bail, but on his own recognizance not to depart out of the district, and appear before the court at all times when required, and submit himself to all orders in the premises. He left the district to reside, and on petition of the assignees a warrant was issued for his arrest and commitment until compliance or further order. He was arrested on this warrant, and applied for further hearing, and for admission to bail until further hearing could be had, and, on this application, the bail in suit was taken. It is objected that the arrest was without authority, and therefore the recognizance was void.

It is strenuously objected that when he was discharged he was under sentence and in execution, and that this court had no power to discharge him so as to leave him subject to recommitment. He was not convicted of any act complete in itself constituting a contempt, and fined, and committed for non-payment of the fine; nor for punishment merely. The refusal to comply with the order requiring delivery to the assignee was a continuing contempt. After the first admission to bail he was, on notice and hearing, committed again for his continued defiance of the order of court. This commitment was within the provisions of the bankrupt law referred to. The commitment was until submission or further order. There was no submission, and the further order was a release on his own recognizance, and a further recommitment on its breach, and his further disobedience. It is argued that this commitment until further order was beyond the power of the court, and whether it was or not has been the

subject of some examination. The power to punish for contempt of court by the court itself is very ancient, nearly as ancient as courts, and very important to the administration of justice; and proceedings for the punishment of contempts have been left almost wholly to the discretion of the courts, vindicating their own dignity and authority. This form of punishment by commitment until further order was adopted very early, and has been continued with great, although not perfect, unanimity. In *Chancey's Case*, 12 Coke, 82, which arose in 1611, the commitment of Sir William Chancey for not complying with an order to allow his wife a competent maintenance was "until further order shall be taken for his enlargement;" and in the *Case of Brass Crosby*, (Lord Mayor of London,) 3 Wils. 188, the commitment by the house of commons for breach of its privilege was "during the pleasure of this said house;" and in *Yates' Case*, 4 Johns. 317, the prisoner was committed to jail, "there to remain until the further order of the court." All those cases came up on *habeas corpus*, and brought in question the validity of the commitments.

In *Chancey's Case* he was discharged because the order to allow his wife a competent maintenance, without further specification, was so general that he could not know when it was complied with; but the propriety of the commitment until further order was not questioned. In the *Lord Mayor of London's Case* the commitment was fully sustained. In *Yates' Case* this form of commitment was fully sustained, and was stated by KENT, C. J., to have been established in all the English courts, and in the two houses of parliament, from almost time immemorial, and to have become too deep-rooted and inveterate a practice for them thus to correct, and as to which he was persuaded that there existed sound reasons for its universal adoption.

Yates was committed by the court of chancery for a contempt of that court, was twice discharged by a judge of the supreme court on *habeas corpus*, and twice recommitted by the chancellor, and was after the second recommitment brought before the supreme court on the *habeas corpus*. The authority to recommit after discharge was much questioned; not on the ground that the court of chancery could not discharge and recommit, on bail or otherwise, but because of the *habeas corpus* act of New York, which provided that no person who should be set at large upon any *habeas corpus* should be again imprisoned for the same offense unless by legal order or process of the court wherein he was bound to appear, or other court having jurisdiction of the cause. 1 Rev. Laws, 355.

The right to recommit was fully sustained by the majority of the supreme court. This decision was reversed by the court of errors in *Yates* v. *People*, 6 Johns. 337; but was affirmed in *Yates* v. *Lansing*, 9 Johns. 224.

As this imprisonment was designed merely to compel obedience and not as a punishment, and the continued disobedience was a continued contempt, it is considered that the arrest was legal and the recognizance valid.

Judgment for plaintiff.

See *In re Cary*, 10 FED. REP. 622, and note, 629.